RECEIVED
USDC CLERK, CHARLESTON, SC

2018 APR 26 PM 12: 39

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

HEATHER C. HOFFMAN

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

CHARTER COMMUNICATIONS

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for a Civil Case**

Case No. 9:18–cv–01145-RMG-MGB
*(to be filled in by the Clerk's Office)*

Jury Trial:    ☐ Yes    ☐ No
*(check one)*

I. The Parties to This Complaint

A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: HEATHER C. HOFFMAN
Street Address: 305 Marsh Point Drive #305
City and County: Hilton Head Island, SC 29926
State and Zip Code: South Carolina, 29926
Telephone Number: (843) 290-6616

B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known). Attach additional pages if needed.

Defendant No. 1

Name: CHARTER COMMUNICATIONS
Job or Title (if known): C/O Corporation Service Company
Street Address: 1703 Laurel Street
City and County: Columbia
State and Zip Code: South Carolina, 29201
Telephone Number:

Defendant No. 2

Name:
Job or Title (if known):
Street Address:
City and County:
State and Zip Code:
Telephone Number:

Defendant No. 3

Name:

2

|                        |                          |
|------------------------|--------------------------|
| Job or Title (if known)| _____ |
| Street Address         | _____ |
| City and County        | _____ |
| State and Zip Code     | _____ |
| Telephone Number       | _____ |

Defendant No. 4

|                        |                          |
|------------------------|--------------------------|
| Name                   | _____ |
| Job or Title (if known)| _____ |
| Street Address         | _____ |
| City and County        | _____ |
| State and Zip Code     | _____ |
| Telephone Number       | _____ |

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question                    ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

See attached

3

**B.** **If the Basis for Jurisdiction Is Diversity of Citizenship**

1. The Plaintiff(s)

   a. If the plaintiff is an individual

   The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

   b. If the plaintiff is a corporation

   The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual

   The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. *Or* is a citizen of *(foreign nation)* _____.

   b. If the defendant is a corporation

   The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____. *Or* is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

   *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3. The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

See attached.

### III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

See attached.

### IV. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached.

### V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

#### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 04/23, 2018

Signature of Plaintiff    *Heather C. Hoffman*
Printed Name of Plaintiff    Heather C. Hoffman

#### B. For Attorneys

Date of signing: _____, 20__.

Signature of Attorney    _____
Printed Name of Attorney    _____
Bar Number    _____
Name of Law Firm    _____
Address    _____
Telephone Number    _____
E-mail Address    _____

RECEIVED
USDC CLERK, CHARLESTON, SC
2018 APR 26  PM 12: 40

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Heather C. Hoffman | } |
| | } CIVIL ACTION NO. |
| Plaintiff | } |
| | } |
| Charter Communications, Inc. ("Charter") | |
| Spectrum Management Holding Company, LLC | |
| (f/k/a Time Warner Cable, Inc.) | |
| | |
| Defendant | |

## PARTIES

1. Plaintiff Heather C. Hoffman is a resident of Beaufort County, South Carolina, who purchases cable television and internet services from Time Warner Cable/Spectrum/Charter Communications since May of 2014 through present time of January of 2018.

2. Defendant Charter Communications, Inc. is a Delaware Corporation headquartered in Stamford Connecticut with its principal place of business at 400 Atlantic Street, Stamford, Connecticut 06901. Although Charter Communications main headquarters are located in Stamford Connecticut, many of their operations are based out of St. Louis, Missouri, which served as their headquarters prior to late 2012.

3. Defendant Spectrum Management Holding Company LLC, is a Delaware Corporation with its principal place of business at 400 Atlantic Street, Stamford, Connecticut 06901.

4. Defendant Time Warner Cable ("TWC") is a Delaware Corporation headquartered in New York, New York, and is a wholly owned subsidiary of Charter Communications, Inc. Time Warner Cable was acquired by Charter Communications on May 18, 2016.

5. Defendant Charter Communications, Inc. ("Charter") and Spectrum Management Holding Company LLC (enjoined "Spectrum-TWC" or "Defendants") formerly known as "Time Warner Cable" and rebranding as "Spectrum".

## JURISDICTION AND VENUE

6. The U.S. District Court of Charleston, South Carolina, has jurisdiction over this civil action pursuant to 28 U.S. Code } 1391.

7. This Court has personal jurisdiction over Charter as: (1) Charter has intentionally engaged its practices in conducting business activities and transactions in South Carolina; (2) Charter currently maintains systematic and continuous business contacts within this State; (3) Charter has millions of customers in South Carolina; and (4) Charter maintains offices and retail locations in this State.

8. Venue is proper in this Court because: (1) Charter engages and performs business activities via interstate commerce with 48 states which includes the State of South Carolina; and (2) Hoffman entered into an agreement to purchase then "TWC" and now "Charter" cable television and internet services while living in South Carolina.

9. Venue is proper in this Court as "Charter" "Spectrum" and/or "TWC" has engaged in deceptive, unlawful and fraudulent billing practices and concealment of said unlawful billing practices through omission and/or silence in violation "FCC" federal regulations including: 47 C.F.R. 76.1619 (a) (b) and 47 C.F.R. 76.1603 (B) (C).

## NATURE OF THE COMPLAINT

10. Plaintiff Heather Hoffman brings this action pursuant to the South Carolina Unfair Trade Practices Act which provides that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby unlawful." S.C. Code Ann. } 39-5-20 (a). Under S.C. Code Ann. } 39-5-140 (a). Hoffman hereby brings this action to remedy prior and ongoing unfair, deceptive, fraudulent and unlawful billing practices in violation of "FCC" regulation 47 C.F.R. 76.1619 (a) (b) and 47 CFR 76.1603 (B) (C) by "Spectrum" "TWC" and/or "Charter Communications" and thereof in violation of S.C. Code Ann. } 39-5-20 (a); under S.C. Code Ann. } 39-5-140 (a).

11. Hoffman alleges that prior to filing this lawsuit, Hoffman verbally questioned the billing increases in her cable television and internet services as both were non-compliant and in violation of "FCC" regulation 47 C.F.R. 76.1603 (B) (C) and 47 C.F.R. 76.1619 (a) with customer service and billing representatives of "Charter Communications" "Spectrum" and/or "TWC". Due to conflicting responses, on October 16, 2017, Hoffman filed a verbal complaint with a customer service representative (Portia) of said carrier disputing unlawful, deceptive and fraudulent billing practices regarding the $10.00 monthly increase in Hoffman's cable rate from $54.99 to $64.99 and $5.00 monthly increase in Hoffman's internet services from $14.99 to $19.99 as being non-compliant to "FCC" regulation regarding "Customer Service – Rate and Service Changes" under 47 CFR 76.1603 (B) (C) and 47 C.F.R. 76.1619 (a) (Information on Subscriber Bills).

12. Hoffman alleged that "Spectrum" "TWC" and/or "Charter Communications" unlawful billing practices are non-compliant to "FCC" regulation 47 CFR 76.1603 (B) (C), as said carrier did not provide 30 day advance written notification prior to raising Hoffman's cable rate from $54.99 to $64.99. Hoffman provided the billing statements to substantiate her legal position and

a copy of the applicable regulation 47 CFR 76.1603 (b) (c): **"Customers will be notified of any changes in rates, programming services or channel positions as soon as possible in writing. Notice must be given to subscribers a minimum of 30 days in advance of such changes."** To reaffirm, Hoffman did not receive 30 day written notification prior to the $10.00 monthly increase in her monthly cable rate as substantiated on her billing statement(s).

13. Secondly, Hoffman alleged that "Spectrum" "TWC" and/or "Charter Communications" was non-compliant to "FCC" regulation 47 CFR 76.1603 (B) (C) by providing a deceptive and fraudulent reason for the monthly cable rate increase as Hoffman was not on a "promotional" rate; Hoffman was on a standard rate as illustrated and substantiated by Hoffman's prior billing statements , "FCC" regulation 47 C.F.R. 76.1619 (a), and the legal definition provided on the Spectrum General Disclosures website in reference to "qualifying customers" and "promotional rates".

14. <u>Pursuant to Spectrum General Disclosures</u>: "Promotional Pricing: "qualifying customer" shall mean a customer who has not subscribed to applicable services within the previous 30 days and has no outstanding obligation to Charter. Standard rates apply after promotional period expires."

15. Hoffman alleges her billing statements substantiate she was not receiving a "promotional" rate or discounted rate for cable services as such promotional rate or discount would be referenced, illustrated or fully itemized on the applicable billing statements as mandated under "FCC" regulation 47 C.F.R. 76.1619 (a).

16. Pursuant to "FCC" regulation 47 C.F.R. 76.1619 (Information on subscriber bills) (a), "bills must be clear, concise and understandable. Bills must be fully itemized, with itemizations including, but not limited to, basic and premium service charges and equipment charges. Bills will also clearly delineate all activity during the billing period, including optional charges, rebates, and credits." Thereby, pursuant to the lawful regulatory requirements of "FCC" regulation 47 C.F.R. 76.1619 (a), Hoffman's billing statements clearly illustrate that Hoffman was not receiving a "promotional" rate or "discounted" rate prior to her cable rate increase; therefore, "Charter Communications" "Spectrum" and/or "TWC" deliberately lied and continues to lie about the reason for the cable rate increase in violation of 47 C.F.R. 76.1603 (b) (c).

17. Hoffman incorporates the aforementioned paragraphs and, again, re-alleges that "Spectrum" "TWC" and/or "Charter Communications" provided a deceptive and fraudulent reason for the $10.00 monthly increase in cable rate in violation of "FCC" regulation 47 C.F.R. 76.1603 (b) (c) as Hoffman was not on a "promotional" rate as substantiated by the written regulatory language of 47 C.F.R. 76.1619 (a) and Hoffman's billing statements. Secondly, said carrier did not provide 30 day advance written notification prior to rate increase thereby non-compliant and in violation of "FCC" regulation 47 CFR 76.1603 (b) (c); and thereby engaged and continues to engage in ongoing unfair, deceptive, fraudulent and unlawful billing practices in violation of S.C. Code

Ann. } 39-5-20 (a) through deliberate and continuous omission and failure to respond to the legal issues and evidence as presented in Hoffman's billing dispute.

18. Thirdly, Hoffman disputed the reason for the $5.00 monthly increase in internet services from $14.99 to $19.99 as noncompliant to "FCC" regulation 47 CFR 76.1603 (B) (C) as no reason was provided for the increase. Pursuant to 47 CFR 76.1603 (c): "In addition to the requirement of paragraph (b) of this section regarding advance notification to customers of any changes in rates, programming services or channel positions, cable systems shall give 30 day advance written notice to both subscribers and local franchising authorities before implementing any rate or service change. **Such notice shall state the precise amount of any rate change and briefly explain in readily understandable fashion the cause of the rate change**".

19. Hoffman alleges non-compliant and in violation of "FCC" regulation 47 CFR 76.1603 (b) (c), Hoffman was not provided a reason or explanation for the monthly increase in internet services as substantiated on her billing statement and thereby "Spectrum" "TWC" and/or "Charter Communications" has engaged and continues to engage in ongoing unfair, deceptive, fraudulent and unlawful billing practices in violation of "FCC" regulation 47 C.F.R. 76.1603 (b) (c), and thereby in violation of S.C. Code Ann. } 39-5-20 (a).

## FACTUAL ALLEGATIONS

20. On October 29, 2017, Hoffman submitted written dispute and complaint to: Spectrum/Time Warner Cable, Post Office Box 70872, Charlotte, North Carolina, 28272-0872; and W. Wesselman, Legal, 13820 Sunrise Valley Drive, Herndon, VA 20171, as up until October 29, 2017, Hoffman received misleading and deceptive responses in her phone conversations with numerous customer service representatives regarding her billing dispute.

21. On October 29, 2017, Hoffman mailed a copy of her complaint to the South Carolina Department of Consumer Affairs, 2221 Devine Street, Columbia, South Carolina 29250-5757.

22. Hoffman received a dated response of November 2, 2017, from Ms. Doris Johnson, Referral Specialist, South Carolina Department of Consumer Affairs, essentially acknowledging her consumer complaint but non-responsive to issues addressed in Hoffman's complaint (SC Complaint No. C17-03403).

23. On and between October 29, 2017 through December 7, 2017, "Charter Communications" "Spectrum" and/or "TWC" never responded to the disputed billing issues presented in Hoffman's written complaint as referenced in paragraphs 1-22. In failing to respond to Hoffman's written complaint, "Charter Communications" "Spectrum" and/or "TWC" acted in violation of "FCC" regulation 47 C.F.R. 76.1619 (b) which reads, "in the case of a billing dispute, the cable operator must respond to a written complaint from a subscriber within 30 days."

24. On November 6, 2017, Hoffman filed a complaint with the "FCC" (Ticket No. 2030297) regarding "Spectrum" TWC" and/or "Charter Communication's" unlawful, deceptive and fraudulent billing practices in violation of "FCC" regulation 47 CFR 76.1603 (B) (C).

25. On November 10, 2017, Hoffman emailed S. Brad Drew, Supervisor, Care Operations for Charter Communications, 11315 Reed Hartman Highway, Cincinati, Ohio 45241, Brad.Drew@charter.com : (1) a copy of Hoffman's complaint and/or billing dispute with "Spectrum" "TWC" and/or "Charter"; (2) copies of the relevant billing statements to substantiate Hoffman's position; and (3) a copy of the applicable "FCC" regulation 47 CFR 76.1603 (B) (C).

26. On November 10, 2017, Hoffman also forwarded a copy of the email and attachments referenced in paragraph 25 to Christine Burby, Supervisor, Tier 3, Charter Communications; Christine.Burby@charter.com.

27. Hoffman affirms to present date that neither S. Brad Drew or Christine Burby have acknowledged, addressed or responded to the disputed billing issues referenced in Hoffman's written complaint. Hoffman alleges their non-response to Hoffman's written complaint is non-compliant and in violation of "FCC" 47 C.F.R. 76.1619 (b). Fraud and deceit can be inferred from silence where there is a duty to speak the truth as well as speaking the untruth.

28. On November 29, 2017, Hoffman contacted "Spectrum" "TWC" and/or "Charter Communications" and was transferred to Thomas H. (employee #1212231), Supervisor in upper level management for "Charter Communications", who confirmed that all the issues presented in Hoffman's complaint and/or billing dispute would be specifically addressed and responded to in writing by "Spectrum" "TWC" and/or "Charter Communications". Thomas H. lied.

29. Hoffman affirms that no manager, supervisor or representative of "Charter Communications" and/or "Spectrum" and/or "TWC" ever contacted Hoffman even after she filed her "FCC" complaint on November 6 and thereafter, to amicably discuss, respond or attempt to resolve Hoffman's written complaint and/or billing dispute with their company even though Hoffman sent numerous certified mailings and emails in attempt to resolve this dispute.

30. On December 13, 2017, Hoffman received a copy of Mr. William C. Wesselman's, Director of Regulatory Law for Charter Communications, dated response of December 7, 2017, to the "FCC" regarding Hoffman's "FCC" complaint of November 6, 2017.

31. Hoffman alleges Mr. Wesselman's response to Hoffman's "FCC" complaint was deliberately misleading, deceptive, and failed to specifically address and respond to the three aforementioned disputed billing issues which are non-compliant and thereby in violation of 47 C.F.R. 76.1603 (B) (C) and 47 C.F.R. 76.1619 (a) (b).

32. On December 12, 2017, Hoffman sent a second email to S. Brad Drew, Supervisor of Care Operations for Charter Communications, again, referencing Hoffman's specific disputed billing issues as substantiated by material evidence (billing statements), and the written regulatory language of 47 C.F.R. 76.1603 (b) (c) which Mr. Wesselman omitted and/or failed to respond to in Hoffman's written complaint and "FCC" complaint. Hoffman also summarized a phone conversation that she had with a member of Mr. Drew's management team (Thomas H.) in

which Thomas H. said the legal issues presented in Hoffman's billing dispute would be addressed in writing with no retaliatory measures taken for filing a complaint. Mr. Drew never responded. Mr. Drew's non-response to Hoffman's written complaint is non-compliant and in violation of 47 C.F.R. 76.1619 (b). Fraud and deceit can be inferred from silence where there is a duty to speak the truth as well as speaking the untruth.

33. On December 12, 2017, Hoffman mailed a complaint to "Charter Communications" legal agent in the State of South Carolina, Corporation Service Company, 1703 Laurel Street, Columbia, SC 29201 clarifying her legal dispute of unlawful and deceptive billing practices by "Spectrum" "Charter Communications" and/or "TWC". Hoffman received no response to her written complaint which, again, is in violation of 47 C.F.R. 76.1619 (b).

34. Hoffman then contacted the "FCC" and spoke with Orlando Ardon regarding "Charter Communications" dated response of December 7, 2017. Mr. Ardon told Hoffman that she could submit a rebuttal complaint to the "FCC" to be served on the carrier.

35. On December 19, 2017, Hoffman submitted a written rebuttal to the "FCC" requesting that "Charter Communications" specifically respond to the unlawful billing practices non-compliant and in violation of "FCC" regulation 47 C.F.R. 76.1603 (b) (c) as presented in Hoffman's complaint and rebuttal. Hoffman submitted and/or attached the applicable, referenced billing statements to substantiate her position and copied the written regulatory language of the applicable "FCC" regulation 47 C.F.R. 76.1603 (B) (C) to further defend her legal position.

36. On January 13, 2017, Hoffman received a copy of Mr. William C. Wesselman's, Director of Regulatory Law for Charter Communications, written response to the FCC in reference to Hoffman's FCC rebuttal of December 19, 2017.

37. Hoffman alleges "Charter Communications" and/or Mr. Wesselman's response to Hoffman's "FCC" complaint, once again, was misleading and deceptive and failed to address and respond to the specific legal issues as presented in Hoffman's complaint and/or billing dispute. Mr. Wesselman also deceptively claimed that Hoffman presented no "new information" in her rebuttal of December 19, 2017. This is legally and factually false, as Hoffman provided and submitted copies of the applicable billing statements to substantiate her legal position in accordance to "FCC" regulation 47 CFR 76.1603 (B) (C) and 47 C.F.R. 76.1619 (a) (b). The submission of said evidentiary materials constitutes "new information" or relevant, material "evidence" which Mr. Wesselman failed and/or omitted to address and respond to.

38. Additionally, Mr. Wesselman states that "Charter Communications" stands by its initial response; however, Mr. Wesselman and/or "Charter Communications" neglected and/or failed to acknowledge, address and/or respond to three of Hoffman's specific legal arguments presented in her complaint as substantiated by her billing statements (material evidence) so there is no legal position on record by "Charter Communications" to stand by responsive to Hoffman's legal argument as substantiated by the evidentiary materials (billing statements), and the written

"FCC" regulatory language of 47 CFR 76.1603 (B) (C) and 47 C.F.R. 76.1619 (a) (b) as it pertains to Hoffman's written complaint.

39. Hoffman herein incorporates all the aforementioned paragraphs and alleges that "Spectrum" "TWC" and/or "Charter Communications" has engaged and continues to engage in unfair, deceptive and unlawful acts and/ business practices in violation of S.C. Code Ann. } 39-5-20 (a) by refusing and/or failing to respond to the disputed billing issues presented in Hoffman's complaint and substantiated by the evidence provided, ongoing deceptive and fraudulent billing practices concerning Hoffman's account, and retaliatory action by interrupting Hoffman's services.

40. On January 14 & 15, 2018, Hoffman submitted a third rebuttal to the "FCC" requesting that "Spectrum" "TWC" and "Charter Communications" respond to Hoffman's specific disputed billing issues as addressed in Hoffman's complaint and the material evidence provided.

41. On January 15, 2018, Hoffman sent a written copy of her complaint to S. Brad Drew, Supervisor, Care Operations for "Charter Communication"; Ms. Serena Parker, Associate Counsel, Litigation, Charter Communications; and Christine Burby, Tier 3 Supervisor for Charter Communications. Again, in violation of "FCC" regulation 47 C.F.R. 76.1619 (b), none of the aforementioned responded to Hoffman's written complaint.

42. Hoffman hereby incorporates the aforementioned paragraphs and alleges that all the aforementioned supervisors in paragraph 41 refused to acknowledge or respond to Hoffman's written complaints even those written complaints addressing Mr. William Wesselman's continuing refusal and omission to specifically address and respond to the disputed billing issues presented in Hoffman's complaint as substantiated by the provided material evidence (billing statements) as it pertains to the written regulatory language of "FCC" 47 C.F.R. 76.1603 (b) (c) and 47 C.F.R. 76.1619 (a). To defend Hoffman's legal position about Mr. Wesselman in her written complaint, Hoffman attached his "FCC" responses.

43. Hoffman alleges these continuous refusals by management to respond to Hoffman's legitimate written complaints are unlawful, fraudulent, non-compliant and in violation of 47 C.F.R. 76.1619 (b), and thereby continuing violation of S.C. Code Ann. } 39-5-20 (a).

44. On January 19, 2018, in follow-up to Hoffman's submission of rebuttal to the "FCC" on January 14 & 15, 2018, Hoffman called the "FCC" to inquire if her rebuttal had been submitted to "Spectrum" "TWC" and/or "Charter Communications" by the "FCC" for response. Hoffman spoke to Brandon (FCC) who confirmed Hoffman's rebuttal was submitted to her carrier on January 16, 2018, for a response.

45. Hoffman herein incorporates the aforementioned paragraphs and affirms that Charter Communications failed to respond to Hoffman's "FCC" complaint as did the aforementioned

managers of Charter Communications as referenced in paragraph 41. Fraud and deceit can be inferred from silence where there is a duty to speak the truth as well as speaking the untruth.

46. On February 11, 2018, Hoffman received a notice of disconnection of services on February 18, 2018, at 5 pm based on the past due involved in this billing dispute. Hoffman alleges this is deliberate retaliatory harassment as Charter Communications has consistently failed to specifically address and respond to the legal issues presented in Hoffman's billing dispute; and in violation of "FCC" regulation 47 C.F.R. 76.1619 (b), "Charter Communications" "Spectrum and/or "TWC" has never directly contacted Hoffman as a customer and/or "subscriber" in response to the issues presented in her billing dispute and/or written complaint. These unlawful actions taken by this carrier constitute continuing violations of S.C. Code Ann. } 39-5-20 (a).

47. On February 12, 2018, Hoffman filed a subsequent complaint with the "FCC" (Ref. #2232400). According to the "FCC", this complaint was served on Charter Communications on February 13, 2018. Hoffman sent copies of her written complaint to S. Brad Drew, Serena Parker, and Christine Burby. Non-compliant and in violation of 47 C.F.R. 76.1619 (b), none of the aforementioned responded to Hoffman's written complaint.

48. Hoffman then received written notification from Charter Communications that her services were scheduled to be interrupted on March 21, 2018, for nonpayment of the disputed billing amount. Hoffman alleges this unlawful retaliatory harassment constitutes a continuing violation of S.C. Code Ann. } 39-5-20 (a) as Charter Communications continues to engage in unlawful, deceptive, and fraudulent billing practices non-compliant and in violation of 47 C.F.R. 76.1603 (B) (C) and 47 C.F.R. 76.1619 (a) (b) and continuously refuses to provide direct response to Hoffman's "subscribers" written complaint, including the evidence provided, thereby acting in continuous violation of 47 C.F.R. 76.1619 (b) and S.C. Code Ann. } 39-5-20 (a).

49. Hoffman alleges, once again, Charter Communications in their dated response of March 15, 2018, to the "FCC" omitted and failed to address and respond to the legal issues and evidence provided through fraud by omission or concealment thereby constituting continuing violations of S.C. Code Ann. } 39-5-20 (a).

50. Hoffman herein incorporates all the aforementioned paragraphs and affirms that in Hoffman's recorded conversations with customer billing representatives of Charter Communications, representatives, including managers, have claimed to possess no knowledge of "FCC" regulation 47 C.F.R 76.1603 (B) (C) and 47 C.F.R. 76.1619 (a) (b) as it pertains to billing practices.

51. Hoffman alleges this response to be false as billing representatives would need to be trained in the aforementioned regulations as they are responsible for generating billing invoices which are compliant to laws and regulations, including 47 C.F.R. 76.1619 (a) (b) and 47 C.F.R. 76.1603 (B) (C).

52. On March 19, 2018, Hoffman filed a fourth rebuttal with the "FCC" regarding the aforementioned in paragraphs 1-52. Hoffman provided written complaint to Ms. Serena Parker, Mr. Brad Drew and Christine Burby.

53. On March 19, 2018, Hoffman was told by a customer billing representative (Gurjot) that her services would be interrupted on March 23, 2018, for refusing to pay the amount owed on her account; even though, acting in bad faith and with fraudulent deception, Charter Communications has refused to respond to Hoffman's written complaint and/or billing dispute, and the material evidence provided (billing statements) in accordance to the written "FCC" regulatory language of 47 C.F.R. 76.1619 (a) (b) and 47 C.F.R. 76.1603 (B) (C). These unlawful actions constitute continuing violations of S.C. Code Ann. } 39-5-20 (a).

54. On March 23, 2018, Hoffman contacted the billing department of "Spectrum" "Charter Communications" and/or "TWC" to complain about her services being interrupted for failing to pay the disputed amount on her account when their company has continuously refused to respond to Hoffman's written complaint and/or billing dispute. Haley reinstated my services through April 6, 2018, to allow "Spectrum" "Charter Communications" and/or "TWC" an opportunity to respond to Hoffman's written complaint.

55. Hoffman herein incorporates the aforementioned paragraphs and further alleges that Hoffman has been fraudulently billed by "Spectrum" "Charter Communications" and/or "TWC" for at least 23 months relative to her rate for standard cable television.

56. Pursuant to Hoffman's billing statement of December 25, 2017, it reads that the rate for standard television services will decrease from $47.99 to $44.10 the following month.

57. Hoffman alleges from May of 2016 through May of 2017, Hoffman was being charged $54.99 per month for standard television services even though the rate was $47.99. This is an overcharge of $7.00 per month for 12 months in the amount of $84.00.

58. Hoffman alleges from June of 2017, through January of 2018, Hoffman was being charged $64.99 per month for standard television services even though the rate was $47.99. This constitutes an overcharge of $17.00 per month for 8 months in the amount of $136.00.

59. Hoffman alleges from February of 2018, through April of 2018, Hoffman was being charged $64.99 per month for standard television services even though the rate was $44.10. This constitutes an overcharge of $20.89 per month for 3 months in the amount of $62.67.

60. Furthermore, as Hoffman's internet increase of $5.00 from $14.99 to $19.99 in September of 2017, was in violation of FCC regulation 47 CFR 76.1603 (B) (C) as no reason was provided for the rate increase, Hoffman has been fraudulently overcharged in the amount of $5.00 per month for 8 months in the amount of $40.00.

61. Hoffman alleges, at the very minimal, Hoffman has been fraudulently overcharged by "Spectrum" "Charter Communications" and/or "TWC" over the past 23 months in the amount of $322.67.

62. In a phone conversation with "Spectrum" "Charter Communications" and/or "TWC" billing supervisor (Brian) ID: 4440815 on April 4, 2018, Brian extended Hoffman's services through April 18, 2018, in an attempt to provide an opportunity for "Spectrum" Charter Communications" and "TWC" to respond to my "FCC" complaints and written complaints to supervisors/managers, including the CEO (Tom Rudledge).

63. When Hoffman contacted "Spectrum" "Charter Communications" and/or "TWC" on April 5, 2018, to verify whether "Spectrum" "Charter Communications" and/or "TWC" had responded to Hoffman's written complaint(s) to the corporate office, Hoffman was told there was no record of an extension of services by Brian on Hoffman's account through April 18, 2018. Hoffman asked to speak with a manager and was transferred to (Brandon) ID: 2150662, manager of billing, who extended Hoffman's services through April 24, 2018, to provide time for my "FCC" and/or federal complaint and/or written complaint to the aforementioned corporate officers to be received and responded to by the carrier.

64. Hoffman mentioned to Brandon being over charged for standard television services at $64.99 per month when the rate was decreased to $44.10.

65. Brandon replied that customers are charged for both starter television (10 channels) and standard television which is why I am charged the $64.99 per month. Hoffman alleges this response is illogical and deceptive as why would customers be double billed for 10 television channels. Hoffman alleges this is another deceptive response by this company to conceal fraudulent billing practices.

66. Pursuant to "FCC" regulation 47 C.F.R. 76.1619 (a), if Hoffman was being monthly charged two separate billing rates for starter television and standard television, both rates would be clearly and fully itemized on the billing statements which they are not.

67. Hoffman hereby alleges that Hoffman continues to be fraudulently billed each month by this carrier for standard cable television in the amount of $20.89 as substantiated by the federal regulatory requirements of 47 C.F.R. 76.1619 (a).

68. Hoffman hereby incorporates the aforementioned paragraphs and alleges that this carrier continues to engage in unfair, deceptive and unfair acts and business practices by refusing and failing to respond to the specific issues in Hoffman's billing dispute and/or written complaint as referenced above, including said carrier has never responded to Hoffman's written complaint directly to Hoffman as a "subscriber" of services non-compliant and in continuing violation of 47 C.F.R. 76.1619 (b) and thereby continuing violation of S.C. Code Ann. } 39-5-20 (a).

69. Hoffman herein incorporates the aforementioned paragraphs and alleges a pattern and practice of unlawful, deceptive and unfair acts and business practices by "Charter Communications" "Spectrum" and/or "TWC" in continuing violation of S.C. Code Ann. } 39-5-20 (a).

## CAUSE OF ACTION

70. Hoffman hereby incorporates all the aforementioned paragraphs and re-alleges that "Spectrum" "TWC" and/or "Charter Communications" has affirmatively engaged in and continues to engage in unfair, deceptive, and unlawful acts and fraudulent billing practices, as referenced above more fully, in violation of "FCC" regulation 47 C.F.R. 76.1619 (a) (b) and 47 CFR 76.1603 (b) (C) either through false response, fraudulent omission and/or silence and thereby in continuing violation of S.C. Code Ann. } 39-5-20 (a).

72. Hoffman hereby incorporates all the aforementioned paragraphs and re-alleges that "Charter Communications" "Spectrum" and/or "TWC" continues to fraudulently conceal their deceptive, unlawful and fraudulent billing practices in violation of "FCC" regulation 47 C.F.R. 76.1619 (a) (b) and 47 C.F.R. 76.1603 (B) (C), by either providing a false, deceptive response, fraudulent omission, and/or silence to three of the specific legal issues presented in Hoffman's written complaint and/or billing dispute and "FCC" complaint, including fraudulent omission of the evidence provided (billing statements) to the carrier in accordance to the aforementioned FCC regulations and thereby in continuing violation of S.C. Code Ann. } 39-5-20 (a).

73. Hoffman hereby incorporates all the aforementioned paragraphs and re-alleges that with purposeful intent to fraudulently conceal their deceptive, unlawful and fraudulent billing and/or business practices in violation of "FCC" regulation 47 C.F.R. 76.1619 (a) and 47 C.F.R. 76.1603 (b) (c), management and/or supervisory staff at "Charter Communications" "Spectrum" and/or "TWC" (corporate) has remained silent and refused to respond to Hoffman's "subscriber" written complaint in violation of 47 C.F.R. 76.1619 (b) and thereby continuing violations of S.C. Code Ann. } 39-5-20 (a).

74. Hoffman hereby incorporates all the aforementioned paragraphs and re-alleges acting with purposeful intent to further conceal their deceptive and unlawful, fraudulent billing and/or business practices non-compliant and in violation of 47 C.F.R. 76.1619 (a) and 47 C.F.R. 76.1603 (B) (C), management and/or supervisory staff at "Charter Communications" "Spectrum" and/or "TWC" (corporate) has remained silent and even refused to respond to Hoffman's written complaints clearly demonstrating that Mr. William Wesselman, either by false, deceptive response and/or omission, is not responding to the disputed billing issues and material evidence in accordance to the aforementioned FCC regulations as presented in Hoffman's written complaint. In remaining silent, management and/or supervisory staff and/or corporate has refused to respond non-compliant to 47 C.F.R. 76.1919 (b) and/or take corrective action thereby acting in continuing violation of S.C. Code Ann. } 39-5-20 (a).

75. Hoffman hereby incorporates all the aforementioned paragraphs and alleges that Hoffman has provided written complaints to all the aforementioned corporate officers of "Charter Communications" "Spectrum" and/or "TWC", including CEO Tom Rudledge, referencing Mr. Wesselman's intentional deceit through false response and omission to the disputed billing issues, evidence, and "FCC" regulations as referenced in Hoffman's written complaint. Hoffman attached copies of Mr. Wesselman's responses to prove Hoffman's point. Corporate refused to respond and/or take corrective action to remedy Mr. Wesselman's unethical, unlawful business practices, thereby, constituting continuous violations of S.C. Code Ann. } 39-5-20 (a) through affirmative action to fraudulently conceal ongoing unlawful billing practices in violation of the aforementioned FCC regulations and overt acts of retaliatory harassment.

## RELIEF

76. Hoffman is hereby requesting this Court grant an injunction and/or a cease and desist order enjoining "Spectrum" "TWC" and/or "Charter Communications" from engaging and continuing to engage in unlawful and deceptive acts or business practices in violation of "FCC" regulation 47 C.F.R. 76.1619 (a) (b) and 47 C.F.R. 76.1603 (B) (C) and thereby in violation of S.C. Code Ann. } 39-5-20 (a), under S.C. Code Ann. }39-5-140 (a).

77. Pursuant to S.C. Code Ann.} 39-5-140 (a), "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive method, act or practice declared unlawful by Section 39-5-20 may bring an action individually, but not in a representative capacity, to recover actual damages. If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of Section 39-5-20, the court shall award three times the actual damages sustained and may provide such other relief as it deems necessary or proper. Upon the finding by the court of a violation of this article, the court shall award the person bringing such action under this section reasonable attorney's fees and costs."

78. Hoffman has been deceptively, fraudulently and unlawfully billed by "Spectrum" "TWC" and/or "Charter Communications" in, at minimal, the amount of $322.67. Hoffman is thereby requesting this Court award Hoffman three times the amount of damages in the amount of $968.01+.

79. That H. Hoffman shall have such other and further relief as the Court shall deem just and proper.

I declare under penalty of perjury that the foregoing is truthfully accurate to the best of my knowledge.

Signed this _20_ day of _April_, 2018.

Signature of Plaintiff _Heather C. Hoffman_

Heather C. Hoffman